Hand-Delivered

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**



FILED
CHARLOTTE, NC

JAN 15 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

**AUNDRAE AKEEM ALLISON,**
Plaintiff,

v.

3:26-cv-39-FDW

**CITY OF CHARLOTTE, NORTH CAROLINA;**
**CHARLOTTE-MECKLENBURG POLICE DEPARTMENT;**
**MECKLENBURG COUNTY SHERIFF'S OFFICE;**
**DEPUTY JEREMY ERB,** in his individual and official capacities;
**CORPORAL DURHAM,** in his individual and official capacities;
**JOHN DOES 1–20,** CMPD officers, deputies, supervisors, NCIC/database custodians,
command staff, and other persons acting under color of state law;
**KAILEE ELIZABETH ALLISON;**
**TYLER OLSON;**
**STEPHANIE OLSON;**
**MOLLY PETERS;**
**VIVIAN PETERS;**
**JOHN PETERS,**

Defendants.

**JURY TRIAL DEMANDED**

## COMPLAINT

*(42 U.S.C. § 1983; Monell Liability; Supplemental State Claims)*

## I. INTRODUCTION

1. This civil-rights action arises from a coordinated course of conduct in which state and private

    actors misused child-custody enforcement mechanisms, including a **North Carolina**

    **warrant purporting to direct law enforcement to take immediate physical custody of**

    **children under N.C. Gen. Stat. § 50A-311,** to criminalize a parent, effectuate an unlawful

arrest in Charlotte, North Carolina, and sever the parent-child relationship—**despite the absence of any valid custody adjudication and despite the predicate foreign proceedings having been dismissed with prejudice and vacated**.

2. Defendants invoked the coercive power of the State to enforce custody allegations and enforcement instruments that were void ab initio, jurisdictionally barred, or legally nonexistent, resulting in Plaintiff's militarized arrest on December 4, 2025, his overnight incarceration, the immediate deprivation of his parental rights, and a prolonged period of enforced no-contact for more than three months. As a direct and foreseeable consequence of Defendants' conduct, Plaintiff has suffered severe emotional distress, reputational damage, loss of liberty, and catastrophic economic harm, while his minor children have suffered the trauma of state-imposed separation from a fit parent without adjudication. Defendants' conduct deliberately converted civil custody disputes into criminal enforcement actions, facilitated strategic forum shopping and unilateral interstate relocation, displaced North Carolina's exclusive home-state jurisdiction under the UCCJEA, and weaponized a § 50A-311 custody warrant as an enforcement shortcut to achieve a custody outcome that could not lawfully be obtained through adversarial proceedings. Rather than adjudicating custody through trial or hearing, Defendants used ex parte mechanisms and law-enforcement intervention to bypass due process and predetermine custody through force.

3. Acting under color of state law, Charlotte-Mecklenburg law-enforcement Defendants relied on void foreign custody instruments, stale and materially misleading database entries, and affirmative misrepresentations and omissions concerning jurisdiction to arrest Plaintiff, seize his liberty, and transfer physical custody of his children without notice, hearing, or lawful authority. These actions were undertaken despite readily available information establishing

the absence of a valid custody adjudication and despite the imminent, already-scheduled custody hearing in North Carolina.

4. Plaintiff seeks declaratory relief declaring Defendants' actions unlawful and unconstitutional; injunctive relief prohibiting further enforcement of void custody instruments and unlawful warrants; compensatory damages for the loss of liberty, family integrity, reputation, and economic opportunity; punitive damages sufficient to deter similar misconduct; and a trial by jury on all issues so triable.

## II. PARTIES

6. Plaintiff Aundrae Akeem Allison is a resident of the State of North Carolina and the biological father of two minor children. Plaintiff possesses a fundamental liberty interest in the care, custody, companionship, and upbringing of his children, protected by the Fourteenth Amendment to the United States Constitution.

7. Defendant City of Charlotte, North Carolina is a municipal corporation organized under the laws of the State of North Carolina. At all relevant times, the City of Charlotte was responsible for the policies, customs, training, supervision, discipline, and practices of the Charlotte-Mecklenburg Police Department and its officers, including those relating to custody enforcement, reliance on foreign custody instruments, use of § 50A-311 warrants, and interstate law-enforcement coordination.

8. Defendant Charlotte-Mecklenburg Police Department ("CMPD") is the municipal law-enforcement agency of the City of Charlotte. At all relevant times, CMPD officers acted under

color of state law and executed Plaintiff's arrest, detention, and custody-related enforcement actions that form the basis of this Complaint.

9.  Defendant Mecklenburg County Sheriff's Office ("MCSO") is the county law-enforcement agency responsible for service and attempted enforcement of civil and criminal process within Mecklenburg County, North Carolina. At all relevant times, MCSO and its deputies acted under color of state law in connection with the attempted service and enforcement of jurisdictionally void custody instruments and warrants.

10.  Defendant Deputy Herb Erb is a sworn deputy employed by the Mecklenburg County Sheriff's Office. He is sued in both his individual and official capacities. At all relevant times, Deputy Erb acted under color of state law and participated in the attempted service and enforcement of a jurisdictionally void custody instrument, as well as actions affecting Plaintiff's custodial and parental rights.

11.  Defendant Corporal Dunham is a sworn law-enforcement officer employed by the Charlotte-Mecklenburg Police Department. He is sued in both his individual and official capacities. At all relevant times, Corporal Dunham acted under color of state law and participated in Plaintiff's December 4, 2025 arrest and the related custody-enforcement actions.

12.  Defendants John Does 1–20 include unknown CMPD officers, MCSO deputies, supervisors, command staff, NCIC and law-enforcement database custodians, records personnel, and other persons acting under color of state law who participated in, authorized, supervised, facilitated, or failed to prevent the unconstitutional conduct alleged herein. Plaintiff will seek leave to amend this Complaint to identify these Defendants upon discovery of their identities.

13. Defendants Kailee Elizabeth Allison, Tyler Olson, Stephanie Olson, Molly Peters, Vivian Peters, and John Peters are private actors who knowingly and willfully participated in false reporting, escalation of allegations, logistical coordination, and joint activity with state actors to misuse judicial and law-enforcement processes. Through their willful participation in and conspiracy with state officials, these Defendants acted jointly under color of state law for purposes of liability under 42 U.S.C. § 1983.

## III. JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction pursuant to **28 U.S.C. §§ 1331 and 1343** because this action arises under the Constitution and laws of the United States, including **42 U.S.C. § 1983**, and seeks redress for violations of Plaintiff's rights under the **Fourth and Fourteenth Amendments** to the United States Constitution.

15. This Court has **supplemental jurisdiction** over Plaintiff's related state-law claims pursuant to **28 U.S.C. § 1367**, as those claims form part of the same case or controversy and arise from a common nucleus of operative fact as Plaintiff's federal civil-rights claims.

16. Venue is proper in this District pursuant to **28 U.S.C. § 1391(b)** because a substantial part of the events and omissions giving rise to the claims occurred in **Mecklenburg County, North Carolina**, including Plaintiff's arrest, detention, seizure of liberty, enforcement of a § 50A-311 custody warrant, and the deprivation of Plaintiff's custodial and parental rights.

# IV. GOVERNING LEGAL FRAMEWORK

## A. Fundamental Parental Rights

17. The **Fourteenth Amendment** to the United States Constitution protects a fundamental liberty interest in the care, custody, companionship, and control of one's children. State interference with that interest is permissible only where the State acts with **lawful jurisdiction**, affords **procedural and substantive due process**, and advances a **compelling governmental interest** through narrowly tailored means. Absent these constitutional prerequisites, state-imposed separation of parent and child is unlawful.

## B. Nature and Limits of a § 50A-311 Custody Warrant

18. A warrant issued pursuant to **N.C. Gen. Stat. § 50A-311 is a purely derivative enforcement mechanism**. It does not create custody rights, confer jurisdiction, adjudicate parental fitness, or substitute for a child-custody determination.

19. A § 50A-311 custody warrant may lawfully issue **only** where all of the following conditions are satisfied at the time of issuance and execution:

a. A **valid, existing child-custody determination** has been entered by a court of competent jurisdiction;

b. The issuing court possessed **subject-matter jurisdiction** under the **Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")**; and

c. The warrant enforces a **lawful, enforceable custody order** that remains in full force and effect.

20. A § 50A-311 warrant **cannot** create jurisdiction where none exists, cure a jurisdictional defect, revive terminated jurisdiction, override a home-state determination, or enforce a custody instrument that is **void, vacated, dismissed with prejudice, or constitutionally defective**.

21. The issuance or enforcement of a § 50A-311 custody warrant **without a valid custody predicate** constitutes an **unreasonable seizure** under the **Fourth Amendment** and a **deprivation of procedural and substantive due process** under the **Fourteenth Amendment**, actionable under **42 U.S.C. § 1983** regardless of an officer's claimed reliance on facial validity.

---

## V. FACTUAL ALLEGATIONS

**A. Forum Shopping and Custodial Interference**

22. The minor children resided continuously in **North Carolina** for approximately **four (4) years** and **three (3) years**, respectively, immediately prior to a brief and temporary **sixty-eight (68) day** stay in Minnesota, establishing North Carolina as the children's **home state** under the **Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")**.

23. On or about **September 8, 2025**, the minor children were enrolled in and began attending school in North Carolina, confirming their residence, integration into the community, and domicile within this State.

24. North Carolina custody proceedings commenced on **September 17, 2025**, and from that date forward the North Carolina courts exercised and retained **exclusive home-state jurisdiction** over custody matters involving the minor children pursuant to the UCCJEA.

25. On **October 17, 2025**, the North Carolina court scheduled the **first custody hearing** for **December 5, 2025**, with a continued hearing set for **December 12, 2025**, before the Honorable **Judge Paige McThenia**, confirming active exercise of jurisdiction and that custody issues were set to be adjudicated through lawful adversarial proceedings.

## B. Termination of Minnesota Child Jurisdiction

26. On **November 26, 2025**, at approximately **4:51 p.m.**, Defendant **Kailee Elizabeth Allison** voluntarily dismissed **with prejudice** all child-related claims in **Minnesota Case No. 19HA-FA-25-548**, thereby terminating Minnesota's child-custody jurisdiction as a matter of law.

27. The dismissal with prejudice constituted a **final adjudication**, barring any further child-related proceedings in that case and extinguishing any authority of Minnesota courts to issue custody, return, seizure, or enforcement orders concerning the minor children.

28. From the moment of dismissal, **no Minnesota court possessed subject-matter jurisdiction** to enter, modify, revive, or enforce any child-custody determination involving the minor children, and any subsequent attempt to do so was **void ab initio** and legally powerless.

## C. Issuance of Void Custody Orders Without Jurisdiction

29. Despite the dismissal with prejudice and the termination of Minnesota's child-custody jurisdiction, on **December 1, 2025**, two Minnesota judges issued purported emergency custody instruments in the same dismissed matter:

a. **Judge Tanya O'Brien** signed a proposed order purporting to compel the return of the children, authorize law-enforcement seizure, mandate electronic contact, and invoke interstate enforcement; and

b. **Judge Luis Morales** issued a separate "emergency" order purporting to grant Defendant **Kailee Elizabeth Allison** sole legal and physical custody.

30. Each of these instruments was issued **after Minnesota's jurisdiction had terminated**, without personal or subject-matter jurisdiction, and without lawful authority.

31. As a result, the December 1, 2025 Minnesota instruments were **void ab initio**, legally nonexistent, and incapable of creating custody rights, authorizing enforcement, or serving as a lawful predicate for arrest, seizure, or interstate law-enforcement action.

---

**D. Misuse of Interstate Enforcement Mechanisms**

32. Defendants relied **exclusively** on the void December 1, 2025 Minnesota instruments as the purported predicate for seeking and enforcing a **North Carolina custody warrant under N.C. Gen. Stat. § 50A-311**.

33. Because no valid child-custody determination existed at the time of issuance or execution, the § 50A-311 warrant was **jurisdictionally defective** and **incapable of lawful enforcement**.

34. Defendants nevertheless sought, obtained, and executed the § 50A-311 warrant while **omitting material facts**, including the Minnesota dismissal with prejudice, the lack of Minnesota jurisdiction, and the existence of already-scheduled North Carolina custody hearings.

35. This misuse of interstate enforcement mechanisms converted a civil custody dispute into a criminal enforcement action without lawful authority, directly and proximately causing the unconstitutional seizure of Plaintiff's liberty and deprivation of his parental rights.

---

### E. Unlawful Arrest, Child Seizure, and Interstate Removal

36. On **December 4, 2025**, officers of the **Charlotte-Mecklenburg Police Department** executed a **militarized arrest** of Plaintiff in Mecklenburg County, North Carolina, surrounding the residence, deploying multiple officers, utilizing bullhorn commands, threatening forced entry, and treating Plaintiff as a criminal fugitive—despite the civil nature of the matter and the absence of exigent circumstances.

37. Plaintiff was arrested, jailed overnight, and detained until approximately **5:30 a.m. on December 5, 2025**, less than twenty-four (24) hours before his **first scheduled North Carolina custody hearing**.

38. While Plaintiff was incarcerated, law-enforcement officers delayed proceedings until Defendant **Kailee Elizabeth Allison** arrived, then facilitated the **physical transfer of the minor children** to her custody and permitted their immediate departure from North Carolina.

39. On **December 5, 2025**, the minor children were removed from North Carolina and transported to Minnesota pursuant to the **void Minnesota instruments** and derivative enforcement actions.

40. As a direct and proximate result of Defendants' conduct, Plaintiff has been deprived of all contact with his children since **December 4, 2025**, resulting in prolonged parental separation, missed significant holidays and his child's **November 24 birthday**, ongoing parental alienation, severe emotional distress, reputational harm, and substantial economic injury.

**F. Continued Enforcement After Vacatur and Home-State Declarations (December 19, 2025)**

41. On **December 19, 2025**, following an interstate judicial communication, both a **North Carolina judge** and a **Minnesota judge** formally declared that **North Carolina is the children's home state** under the UCCJEA and that **North Carolina would handle all custody matters** going forward.

42. On that same date, Minnesota courts **vacated** the December 1, 2025 emergency custody instruments previously relied upon for interstate enforcement, confirming that those instruments lacked jurisdictional validity and could not lawfully authorize custody, seizure, arrest, or continued enforcement.

43. Despite the vacatur and express home-state declarations, Defendants **failed and refused** to unwind prior enforcement actions, correct law-enforcement databases, withdraw derivative warrants or alerts, or facilitate restoration of Plaintiff's parental contact.

44. Defendants' continued reliance on **vacated and jurisdictionally void predicates** prolonged Plaintiff's separation from his children, maintained unlawful restraints on his liberty and parental rights, and caused ongoing constitutional injury.

45. Each day Defendants maintained or acquiesced in enforcement effects traceable to vacated orders constituted a **new and independent violation** of Plaintiff's Fourth and Fourteenth Amendment rights, undertaken with **actual notice** of the jurisdictional determinations and vacatur.

## VI. QUALIFIED IMMUNITY DOES NOT APPLY

46. Qualified immunity does not shield Defendants from liability because the constitutional rights violated were **clearly established** at the time of Defendants' conduct.

47. It was clearly established that law-enforcement officers may not arrest or seize an individual based on **void, vacated, or jurisdictionally defective custody instruments**, nor may they enforce civil custody matters absent a valid custody adjudication and lawful jurisdiction.

48. It was further clearly established that parents possess a **fundamental liberty interest** in the care, custody, and companionship of their children, and that state actors may not interfere with that relationship **without notice, a hearing, and lawful authority**.

49. No reasonable officer could believe that enforcing a **§ 50A-311 custody warrant** predicated solely on **void Minnesota orders**, issued after jurisdiction had terminated and later vacated, constituted lawful authority.

50. Defendants' conduct—including arresting Plaintiff, transferring custody, and maintaining enforcement effects after vacatur and home-state declarations—was **objectively unreasonable** under clearly established Fourth and Fourteenth Amendment law.

## VII. PROBABLE CAUSE FAILURE (GLOBAL)

51. Probable cause cannot exist where enforcement and criminalization rest on **void legal predicates**, **fabricated or terminated jurisdiction**, and the omission of **material exculpatory facts**.

52. At the time of Plaintiff's arrest and detention, no valid child-custody determination existed authorizing enforcement, seizure, arrest, or transfer of custody.

53. The Minnesota custody instruments relied upon were issued **without subject-matter jurisdiction**, were later **vacated**, and were legally incapable of supporting probable cause as a matter of law.

54. Defendants further failed to disclose or account for material facts negating probable cause, including the **dismissal with prejudice** of Minnesota child-custody claims, the **scheduled North Carolina custody hearings**, and the absence of any adjudication finding Plaintiff unfit or dangerous.

55. Because all enforcement actions were predicated on **void and jurisdictionally barred instruments**, probable cause was absent from inception, rendering Plaintiff's arrest, detention, and continued enforcement **unconstitutional per se**.

## VIII. MONELL LIABILITY — MUNICIPAL DEFENDANTS

56. Plaintiff's constitutional injuries were caused by official policies, customs, and practices of the municipal Defendants, including the City of Charlotte, the Charlotte-Mecklenburg Police Department, and the Mecklenburg County Sheriff's Office.

57. These policies and customs include, but are not limited to:

a. The misuse of § 50A-311 custody warrants as independent sources of enforcement authority;

b. Failure to verify custody jurisdiction and the legal validity of foreign custody instruments before enforcement;

c. Reliance on stale, incomplete, or false law-enforcement database entries;

d. Failure to correct or withdraw enforcement actions after vacatur, dismissal, or home-state declarations; and

e. The conversion of civil custody disputes into criminal enforcement actions without lawful predicate.

58. Municipal Defendants were deliberately indifferent to the known and obvious risk that these policies and failures would result in unconstitutional arrests, seizures, and deprivations of parental rights.

59. These policies, customs, and failures were the moving force behind Plaintiff's injuries, including loss of liberty, deprivation of family integrity, emotional distress, reputational harm, and economic damages.

## IX. CAUSES OF ACTION

*(Each Count incorporates paragraphs 1–59 as if fully set forth herein.)*

### COUNT I — 42 U.S.C. § 1983 (False Arrest / Unlawful Seizure)

60. Defendants, acting under color of state law, caused Plaintiff to be arrested and seized on December 4, 2025, without probable cause and without a lawful predicate, based on void and jurisdictionally defective custody instruments and derivative enforcement actions.

61. Plaintiff suffered loss of liberty, humiliation, emotional distress, and continuing harm as a direct result.

### COUNT II — 42 U.S.C. § 1983 (Due Process — Procedural and Substantive)

62. Defendants deprived Plaintiff of notice and a meaningful opportunity to be heard before effecting a state-enforced deprivation of custody, liberty, and family association.

63. Defendants further violated substantive due process by interfering with Plaintiff's fundamental parental rights and family integrity absent lawful authority, jurisdiction, or adjudication.

### COUNT III — 42 U.S.C. § 1983 (Malicious Prosecution)

64. Defendants caused criminal proceedings to be initiated and maintained against Plaintiff without probable cause, through reliance on void custody predicates, omission of jurisdictional defects, and mischaracterization of lawful custodial conduct.

65. Defendants acted with malice and/or reckless disregard for Plaintiff's constitutional rights, resulting in seizure, restraint of liberty, and continuing harm.

## COUNT IV — 42 U.S.C. § 1983 (Civil Conspiracy)

66. Defendants reached an understanding and acted in concert to accomplish an unlawful objective: seizure of the children, criminalization of Plaintiff, and continuation of enforcement despite jurisdictional defects and vacatur.

67. Defendants committed overt acts in furtherance of the conspiracy, including invoking § 50A-311, effectuating arrest, transferring custody, and maintaining enforcement effects.

## COUNT V — 42 U.S.C. § 1983 (Abuse of Authority / Abuse of Process Under Color of Law)

68. Defendants abused law-enforcement and legal-process mechanisms to accomplish a custody outcome and criminal restraints without jurisdiction, lawful predicate, or adjudication.

## COUNT VI — 42 U.S.C. § 1983 (Use of False or Stale Information / Omitted Exculpatory Facts)

69. Defendants relied on dismissed allegations, stale narratives, and materially incomplete or misleading information, while omitting known exculpatory facts—including dismissal with prejudice, lack of jurisdiction, and scheduled custody hearings—to support enforcement and arrest.

**COUNT VII — 42 U.S.C. § 1983 (Deprivation of Parental Rights / Family Integrity)**

70. Defendants deprived Plaintiff of the fundamental right to custody, care, and companionship of his children without lawful authority, jurisdiction, or adjudication, and continue to perpetuate that deprivation through ongoing enforcement effects.

**COUNT VIII — MONELL LIABILITY (Municipal Defendants)**

71. The City of Charlotte, CMPD, and the Mecklenburg County Sheriff's Office are liable because Plaintiff's injuries were caused by municipal customs, practices, and failures—including misuse of § 50A-311, failure to verify jurisdiction, reliance on stale database entries, and failure to correct enforcement after vacatur—that were the moving force behind the constitutional violations.

**COUNT IX — Defamation (State Law)**

72. Defendants published false statements portraying Plaintiff as dangerous, criminal, or unfit, causing reputational injury, emotional distress, and economic harm.

**COUNT X — Intentional Infliction of Emotional Distress (State Law)**

73. Defendants engaged in extreme and outrageous conduct—using state power, false narratives, and unlawful enforcement to criminalize Plaintiff and separate him from his children— intentionally or recklessly causing severe emotional distress.

**COUNT XI — 42 U.S.C. § 1983 (Continued Enforcement of a Void Custody Warrant)**

74. Defendants knowingly maintained and enforced custody-related enforcement effects, including arrest consequences and deprivation of parental contact, despite vacatur, dismissal, and home-state jurisdictional declarations.

75. Each day such enforcement effects persist constitutes a new and independent unconstitutional deprivation of liberty and parental rights.

---

## X. RULE 65 — TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

76. Plaintiff is likely to succeed on the merits because Defendants' arrest, custody transfer, and continued enforcement actions are predicated on void custody instruments, jurisdictionally defective predicates, materially incomplete probable cause, and enforcement maintained after vacatur and home-state jurisdictional declarations.

77. Plaintiff will suffer irreparable harm absent immediate injunctive relief, including continued deprivation of family integrity, ongoing restraint of liberty, and continuing exposure to arrest, detention, and enforcement effects unsupported by lawful authority.

78. The balance of equities favors Plaintiff because Defendants face no legitimate hardship in ceasing unconstitutional enforcement, while Plaintiff continues to suffer ongoing and compounding constitutional injury.

79. The public interest favors enforcement of constitutional limits, accurate warrants and law-enforcement databases, and preventing state actors from functioning as de facto custody adjudicators absent lawful jurisdiction and adjudication.

80. Plaintiff therefore seeks a temporary restraining order and preliminary injunction ordering Defendants and all persons acting in concert with them to:

a. Immediately cease enforcement of any custody-related warrants, pickup orders, holds, or arrest requests premised on void or jurisdictionally defective custody predicates;

b. Correct and cause correction of all associated law-enforcement databases, communications, and notices, including any NCIC or interstate entries based on void or vacated instruments;

c. Provide written confirmation that all enforcement actions issued in reliance on void custody predicates have been withdrawn or recalled; and

d. Enjoin further investigatory harassment, surveillance, or enforcement contacts lacking probable cause and lawful authority

---

## XI. DAMAGES

*(Quantified for Settlement or Jury Presentation — $50,000,000 Total Exposure)*

81. Plaintiff seeks compensatory and punitive damages for extraordinary, willful, and ongoing violations of fundamental constitutional rights, including prolonged loss of liberty, destruction of family integrity, reputational harm, and continuing emotional trauma.

### A. Compensatory Damages

82. Plaintiff seeks compensatory damages in an amount to be proven at trial, including but not limited to:

- Wrongful arrest, armed seizure, and incarceration, including multi-officer arrest and overnight detention: **$2,500,000**

- Loss of liberty and freedom of movement, including continued enforcement effects and threat of re-arrest: **$5,000,000**

- Emotional distress and psychological trauma, including arrest, incarceration, prolonged separation from children, fear, humiliation, and stress: **$7,500,000**

- • Loss of parental association and family integrity, including more than three months without contact, missed holidays and November 24 birthday, and concealment of children's location: **$15,000,000**

- Reputational damage and economic harm, including criminalization, professional disruption, and loss of opportunities: **$5,000,000**

- Future damages, including ongoing trauma, impairment of the parent-child relationship, and continuing legal risk: **$5,000,000**

83. Subtotal compensatory damages: **$40,000,000**.

84. The loss of a parent-child relationship through state action without adjudication constitutes one of the most severe civil-rights injuries recognized under federal law and warrants substantial compensatory damages.

**B. Punitive Damages**

85. Punitive damages are warranted where Defendants act with evil motive, intent, or reckless indifference to federally protected rights.

86. Defendants' conduct was willful, malicious, and egregious, including enforcement of custody and criminal restraints without jurisdiction, continued enforcement after vacatur, and maintenance of enforcement effects after clear notice of constitutional invalidity.

87. Plaintiff seeks punitive damages in the amount of **$10,000,000**, or such greater amount as determined by the jury, sufficient to punish and deter similar misconduct.

**C. Total Damages Sought**

88. Total damages sought: **$50,000,000**.

## XII. PRAYER FOR RELIEF

89. Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

a. Declaratory relief declaring the challenged enforcement actions and continued custody-related enforcement unlawful and unconstitutional;

b. Temporary, preliminary, and permanent injunctive relief ordering cessation of enforcement and correction of all related databases, notices, and communications;

c. Compensatory damages in the amount of **$40,000,000**, or as proven at trial;

d. Punitive damages in the amount of **$10,000,000**, or as determined by the jury;

e. Costs and attorney's fees pursuant to **42 U.S.C. § 1988**, as applicable; and

f. Such other and further relief as the Court deems just and proper.

## XIII. JURY DEMAND

90. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 15th day of January, 2026.

**AUNDRAE AKEEM ALLISON**
Plaintiff, Pro Se
12110 Anne Blount Aly
Huntersville, NC 28078
Telephone: (704) 425-3740
Email: aundrae@aundraeallison.com

## VERIFICATION

I, Aundrae Akeem Allison, depose and say:

1. I am the Plaintiff in this action and am proceeding pro se.

2. I have personal knowledge of the facts stated in the foregoing Complaint.

3. The facts stated therein are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury pursuant to North Carolina law that the foregoing is true and correct.

This the 15th day of January, 2026.

_____

Aundrae Akeem Allison